UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ALBERT REGINALD ROBINSON,

                Plaintiff,

v.

UNKNOWN HITCHINGHAM et al.,

                Defendants.

_____/

Case No. 1:24-cv-125

Honorable Ray Kent

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

Case 1:24-cv-00125-RSK   ECF No. 18,  PageID.22   Filed 06/18/24   Page 3 of 27

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kissell, Rewerts, Nevins, Unknown Party #1, and Unknown Party #2. The Court will also dismiss, for failure to state a claim, Plaintiff's conspiracy claims against Defendants Hitchingham and Silliman, and his access to courts, Fifth Amendment, due process, and equal protection claims against Defendant Hitchingham.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Librarian Unknown

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Hitchingham, Inspector Unknown Silliman, Librarian Unknown Kissell, Warden Randee Rewerts, Assistant Deputy Warden K. Nevins, Deputy Warden Unknown Party #1, and Assistant Deputy Warden Unknown Party #2 in their individual and official capacities.

Plaintiff states that in July and August of 2023, he filed multiple grievances for himself and another inmate and beat a false misconduct by Sergeant Maiga, who is not a defendant, as well as filed a civil rights complaint on Sergeant Maiga. (ECF No. 1, PageID.7.) Up until that point, Plaintiff had been getting four hours of law library time per week. (*Id.*, PageID.10.) Plaintiff claims that around that time, Defendant Hitchingham began attempting to read his pleadings when making copies and writing down the names of the staff members named in the pleadings. Plaintiff believes that Defendant Hitchingham subsequently passed that information on to various "upper staff members." (*Id.*, PageID.7.)

Plaintiff alleges that on August 1, 2023, he requested legal copies from Defendant Hitchingham. Plaintiff attempted to show her the exhibit list, but Defendant Hitchingham ordered him to go sit down. Plaintiff then watched as Defendant Hitchingham began reading each page. Defendant Hitchingham asked Plaintiff why the pleadings contained a grievance for copying, told him he had no money, and when Plaintiff objected to her continued reading, she refused to provide him with copies. (*Id.*, PageID.6.)

Approximately one week later, Plaintiff showed Defendant Kissell the same pleading and exhibits and received his requested copies. Plaintiff believes that Defendant Hitchingham's denial of copies was motivated by a desire to retaliate against him. Plaintiff also states that he observed Caucasian prisoners receive copies from Defendant Hitchingham without any problem, and that Defendant Hitchingham never attempted to read their pleadings. (*Id.*, PageID.7.) Plaintiff claims that another inmate, DeCinces Martin #755594, was helping him in the law library on August 1,

4

2023, when Defendant Hitchingham observed this and removed Plaintiff from his regular Tuesday law library sessions. Plaintiff claims that this violated his right of access to the courts. Plaintiff filed a grievance regarding this conduct. (*Id*.)

Plaintiff alleges that on August 26, 2023, he kited a legal photocopy disbursement to the law library, requesting copies of grievances and attachments for a complaint to the Ombudsman's office and the Attorney General's office, and that his request was denied by Defendant Hitchingham on August 28, 2023. Plaintiff filed a grievance, which was denied because Plaintiff had not sought exhibits to serve on a party or to file with a court. Plaintiff asserts that this was done to retaliate against him. (*Id.*, PageID.8.) Plaintiff's grievance on this matter was denied by Defendant Kissell based on "PD 05 03 116 (N)," and Defendant Rewerts denied Plaintiff's appeal by falsely claiming that Plaintiff's grievance had been resolved. (*Id.*) Plaintiff contends that he is entitled to file complaints with the Ombudsman and the Attorney General's office and that Defendants never explained how the policy forbids copies for filing with these agencies. (*Id.*, PageID.9.) Plaintiff wrote letters of complaint to Defendant Rewerts' office complaining of the harassment and retaliation he was being subjected to but did not receive a response. (*Id.*)

Plaintiff alleges that on September 8, 2023, he sent a copy request to the law library. Plaintiff was called out on September 11, 2023, but when he arrived Defendant Hitchingham immediately said, "I won't make copies for you at this time, please leave." (*Id.*, PageID.13.) Plaintiff's grievance on this issue was denied by Defendant Kissell and Defendant Unknown Party #2, also referred to as "Garde." (*Id.*) On September 15, 2023, Defendant Hitchingham told Plaintiff that she needed to read the entire pleading to verify that he needed copies in violation of Policy Directive 05.03.116(P). Plaintiff asked inmate witnesses to provide him with a "declaration" in support of his claims, but that Defendant Hitchingham overheard him and reported this to the

Warden's office. Plaintiff states that the inmates in question were subsequently transferred to another prison. (*Id.*, PageID.14.)

Plaintiff's law library time was cut to two hours per week around the middle of September, and this continued until sometime in November. (*Id.*, PageID.10.) Plaintiff's initial grievance on the subject was rejected. Plaintiff then filed a second grievance on October 27, 2023, and was interviewed by Defendant Kissell. Plaintiff eventually received an additional two hours per week in the library, but the cancelled hours were replaced with days in which there is no staff in the library. (*Id.*) Plaintiff claims that he submitted photocopy requests on October 31, 2023, November 4, 2023, November 7, 2023, and November 14, 2023, but never received any response to them. Plaintiff believes that they were destroyed and never processed. (*Id.*, PageID.11.)

Plaintiff asserts that around the end of September 2023, he received an application for the Macomb County Integrity Unit along with a questionnaire seeking extensive information regarding his criminal conviction and sentencing. (*Id.*, PageID.11.) Plaintiff states that the limitation of two hours per week in the law library prevented him from effectively presenting his claims to the Macomb County Prosecuting Attorney who handled the Integrity Unit. (*Id.*) Plaintiff states that on October 6, 2023, he submitted a request for copies needed to process his application for appeal with the Macomb County Integrity Unit, but that his request was denied because he did not have any money in his account. Plaintiff claims that as an indigent prisoner, he should have received copies. (*Id.*, PageID.15.) Plaintiff mailed his application without the copies but asserts that he will definitely need exhibits for the investigation. (*Id.*) Plaintiff filed a grievance but was told that he needed to copy cases by hand. Plaintiff states that this would be hardship on him and is denying him access to the courts. (*Id.*) Plaintiff claims that inmate Fritz, who is Caucasian, provided him

with a declaration asserting that he has no difficulty getting copies from Defendants Hitchingham. (*Id.*)

Plaintiff states that he had to file "around 9 grievances, file and litigate 2 civil actions, and fight for [his] freedom with just two hours of law library time weekly." (*Id.*, PageID.11.) Plaintiff claims that Defendants Hitchingham, Kissell, and Unknown Party #2 conspired to violate Policy Directive 05.03.115(L), which permits Plaintiff four hours of law library time per week and Policy Directive 05.03.115(N), which allows Plaintiff at least two additional hours with documentation of need provided to staff. (*Id.*, PageID.12.) Plaintiff asserts that he wrote letters to Defendants Rewerts, Defendant Unknown Parties #1 and #2, and Defendant Nevins regarding the cut in library hours, but they refused to effectively supervise Defendants Hitchingham and Kissell. (*Id.*, PageID.12.)

Plaintiff alleges that on October 17, 2023, he was called out for legal mail, but Officer Van or Vandriel told Plaintiff that he could not give him the mail per orders from Defendant Silliman. Plaintiff does not specify whether the piece of mail was opened outside of his presence. Plaintiff states that the mail consisted of a letter from Tiffany P. Howell, Attorney at Law, and was clearly marked "Legal Mail." (*Id.*, PageID.17.) The letter had a heading of "N.A.C. which Plaintiff states stands for "National Appellate Clinic," and that they were trying to help Plaintiff with appealing his conviction and sentence. (*Id.*) Plaintiff had previously filled out an application with the N.A.C. on September 16, 2023. Plaintiff was given a copy of the envelope, but the letter was rejected. (*Id.*) Plaintiff wrote a letter of complaint to Defendant Rewerts. However, Defendant Rewerts "conspired" with Defendant Silliman to deny Plaintiff his legal mail, and Plaintiff never received his letter despite never having a hearing on the matter. (*Id.*, PageID.17-19.) Plaintiff states that on October 18, 2023, the N.A.C. attempted to contact Plaintiff on Jpay, but that message was also

rejected without a hearing. The reason given was that Plaintiff was "entering into a contract/engaging in business," which is false because Plaintiff was merely trying to get assistance with appealing his conviction and sentence. (*Id.*, PageID.20.)

On October 27, 2023, Plaintiff kited the law library asking to be placed back on Friday 12:30 p.m. to 1:30 p.m. call out. Plaintiff did not receive a response, so he filed a second grievance. Plaintiff was interviewed on the grievance by Defendant Kissell, who acknowledged that Plaintiff currently had only two call outs and stated that he was giving Plaintiff an additional two call outs including one on Friday from 12:30 to 1:30 p.m. (*Id.*, PageID.21.) Plaintiff concludes that he was denied access to the courts for a period of two months and that this caused him irreparable harm because he did not have time to effectively fill out the application for the N.A.C. and to the Macomb County Integrity Unit. (*Id.*)

On November 28, 2023, Plaintiff was told by Counselor Hoffman, not a defendant, that he was to be reclassified. Plaintiff opines that administration at DRF want him off indigent status because this is the only way that Plaintiff can get copies for exhibits. Plaintiff asserts that if he works an institutional job, one hundred percent of his pay will be taken to pay for institutional debt, leaving him with nothing every month. But if he is not indigent, he can be denied legal mail postage, indigent supplies, copies, and hygiene items. Plaintiff contends that he is on indigent status because he has sciatic nerve issues on his right side. (*Id.*)

On December 7, 2023, Plaintiff was told by Counselor Hoffman, not a defendant, that Assistant Deputy Warden Garcia, also not a defendant, had told him that Plaintiff could only receive twenty sheets of paper each month. Plaintiff asserts that because he needs to make two copies of each page, his paper supply for December was used up by the ninth of the month. (*Id.*, PageID.9.) On December 8, 2023, Plaintiff asked Garcia, not a defendant, for typing paper which

is provided to indigent prisoners, but was told that he did not have any. (*Id.*, PageID.22.) Plaintiff asserts that the fact that he has had to file numerous grievances on Defendant Rewerts shows a failure to supervise her subordinates. (*Id.*)

Plaintiff claims that Defendants violated his rights under the First, Fifth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Rewerts, Nevins, and Unknown Parties #1 and #2

Plaintiff fails to allege that Defendants Rewerts, Nevins, Unknown Party #1, or Unknown Party #2 took any action against him, other than to suggest that these Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

10

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Rewerts, Nevins, Unknown Party #1, or Unknown Party #2 encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Rewerts, Nevins, Unknown Party #1, and Unknown Party #2 are premised on nothing more than respondeat superior liability, he fails to state a claim against them.

### B.  Access to the Courts claims against Defendant Hitchingham

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous

claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

In this case, Plaintiff asserts that the limitation in his law library hours and Defendant Hitchingham's refusal to make copies made it difficult to effectively present his claim with the Macomb County Prosecutor's Integrity Unit, but that he did complete his application and filed a claim and will need copies of documents later for the investigation. Assuming without deciding that Plaintiff's right of access to the courts extends to a claim with the Macomb County Prosecutor's Conviction Integrity Unit (CIU)[2], Plaintiff fails to state a claim with respect to his application with the CIU. The Macomb County Prosecutor's Office provides information regarding its Conviction Integrity Unit and instructions on filing a claim:

An applicant (person seeking CIU help), must meet the following requirements:

1. You must have been convicted in Macomb County in a case prosecuted by the Macomb County Prosecutor's Office. Federal proceedings and cases that arose in other States or Counties will not be accepted for review or investigation.

2. You must present a claim of factual innocence. That is, you played no role in the crime at issue.

---

[2] *See Crutcher v. Colombo*, No. 21-1116, 2021 WL 6803114, at *2 (6th Cir. Nov. 29, 2021) (holding that the First Amendment right of access to the courts extends to the pursuit of state-court collateral attacks on convictions).

3. New, credible, material information must support your claim of innocence. This is evidence not previously specifically addressed by any court. You might know of such evidence, or it may be identified during a CIU investigation of your case.

4. All appeals must be final.

5. A guilty plea is eligible for review if you can show factual innocence based on newly discovered evidence.

*See* https://www.macombgov.org/departments/prosecutors-office/units/conviction-integrity-unit.

As noted above, Plaintiff must plead facts showing that he was prejudiced by the alleged violation. *Pilgrim*, 92 F.3d at 416. Therefore, Plaintiff must "identify a 'nonfrivolous,' 'arguable' underlying claim" that the defendants' actions prevented him from pursuing. *Christopher*, 536 U.S. at 415 (quoting *Lewis*, 518 U.S. at 353 n.3). Plaintiff has failed to identify such a claim. Plaintiff has not explained his proposed grounds for challenging his conviction or shown that the underlying claim is nonfrivolous. Moreover, Plaintiff was not precluded from filing his application and does not allege that it was denied on the basis of his inability to attach copies or to spend four hours a week researching cases in the law library. Consequently, Plaintiff has failed to state a claim for denial of access to the courts with respect to his CIU application.

Nor did Plaintiff's inability to obtain copies for complaints to the Ombudsman's office and the Attorney General's office implicate his First Amendment right of access to the courts. As noted above, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, as with his CIU claim, Plaintiff fails to allege any specific facts regarding the underlying claims to show that they were nonfrivolous.

**C.    Interference with legal mail by Defendant Silliman**

With respect to Plaintiff's claim that Defendant Silliman denied him access to a letter and Jpay mail from attorney Tiffany P. Howell, the Court notes that as with Plaintiff's claim regarding

14

his CIU application, Plaintiff fails to allege any specific facts regarding the nature of his communications with Attorney Howell other than to assert that he wanted her to help appeal his conviction and sentence. The Court notes that Plaintiff has already appealed his conviction in the state courts, *People v. Robinson*, Nos. 311356 and 314604, 2014 WL 7157642 (Mich. Ct. App. Dec. 16, 2014) and 501 Mich. 874 (Mich. Oct. 3, 2017) and had his petition for writ habeas corpus denied by the United States District Court for the Eastern District of Michigan. *Robinson v. Campbell*, No. 18-CV-13943, 2022 WL 4277519 (E.D. Mich. Sep. 15, 2022). Moreover, Plaintiff's subsequent motion for a certificate of appealability was denied by the Sixth Circuit. *Robinson v. Shaver*, No. 22-1885, 2023 WL 6377595 (6th Cir. Apr. 14, 2023). Therefore, Plaintiff's attempts to communicate with an attorney could not have been related to a direct appeal or an application for habeas corpus relief.

The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard than those governing general mail. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" related to his legal rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). Courts have therefore extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence . . . ." *Kensu*, 87 F.3d at 174 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)).

15

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. "Mail from an attorney . . . is legal mail as a matter of law . . . ." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (citing *Sallier*, 343 F.3d at 877). This includes where the attorney does not have an established attorney-client relationship. *See id.* Similarly, "mail to a prisoner's attorney or a court relating to his or her legal claims constitutes 'legal mail.'" *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009). In contrast, "correspondence with the American Bar Association ('ABA'), county clerks, or registrars of deeds does not [constitute legal mail] because it generally 'd[oes] not contain confidential, personal or privileged material.'" *Id.* (quoting *Sallier*, 343 F.3d at 875–78). Moreover, the ABA, county clerks, and registrars of deeds are "not [] direct-services legal organization[s] and generally do[] not provide legal advice." *ACLU Fund of Mich.*, 796 F.3d at 643.

As noted above, Plaintiff claims that the mail was clearly marked as legal mail and was from an attorney. Therefore, although Plaintiff's claim is largely conclusory, the Court concludes that Plaintiff has stated sufficient facts to support a claim against Defendant Silliman for interfering with his legal mail at this point in the litigation.

### D.    Retaliation by Defendants Hitchingham and Kissell

Plaintiff claims that Defendants Hitchingham and Kissell retaliated against him for filing grievances and complaints and for beating a false misconduct ticket written by Sergeant Maiga, who is not a defendant in this case. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3)

16

the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id.* at 353 n.3.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff's allegations against Defendant Kissell include that he denied grievances that Plaintiff had written on Defendant Hitchingham for denying him copies and that he interviewed

Plaintiff on his grievance regarding the loss of two hours a week in the law library. Following the interview, Defendant Kissell increased Plaintiff's law library time by giving him an additional two hours. Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim).

Refusing to process a grievance could not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences. Prisoners do not have a right to an effective grievance procedure, and they suffer no consequences for filing a grievance that is not processed. It is true that a prisoner must exhaust available administrative remedies before bringing a civil-rights claim in court, *see* 42 U.S.C. § 1997e(a), but even assuming that Defendant improperly prevented Plaintiffs from pursuing particular grievances, Defendant could not have prevented Plaintiffs from pursuing a civil rights claim based on an issue raised in those grievances. If Defendant thwarted Plaintiff's ability to use the grievances process, then the process was not "available" to Plaintiff for that claim, and exhaustion would not be a prerequisite

for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001). Plaintiff fails to allege facts showing that Defendant Kissell took an adverse action against him. Therefore, his retaliation claim against Defendant Kissell is properly dismissed.

Plaintiff alleges that Defendant Hitchingham denied him copies for various complaints, including a lawsuit which he had filed against DRF staff, and cut his library hours by two hours a week. The Court concludes that Plaintiff has sufficiently alleged that Defendant Hitchingham took adverse action against him which would deter a person of ordinary firmness from exercising his constitutional rights.

In order to state a retaliation claim against Defendant Hitchingham, Plaintiff must allege facts showing that Defendant Hitchingham's conduct was motivated, at least in part, by the Plaintiff's protected conduct. As noted above, Plaintiff alleges that in July and August of 2023, he filed multiple grievances for himself and another inmate, beat a misconduct written by a non-Defendant Sergeant Maiga, and filed a civil rights complaint on Sergeant Maiga. (ECF No. 1, PageID.7.) Plaintiff states that around this time, Defendant Hitchingham began trying to read his pleadings in their entirety when making copies, and that Defendant Hitchingham wrote down the names of any staff named in Plaintiff's complaints in order to pass that information on to "upper staff members." (*Id.*) Plaintiff also alleges that on August 1, 2023, Defendant Hitchingham only refused to provide him with copies after he told her to stop reading his entire pleadings, and that Defendant Kissell later made the requested copies without issue. (*Id.*, PageID.6-7.) The Court

concludes that Plaintiff has alleged sufficient facts to state a retaliation claim against Defendant Hitchingham at this point in the litigation.

### E.      Fifth Amendment

Plaintiff also asserts that Defendants violated his rights under the Fifth Amendment. The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment, however, only applies to alleged deprivations by federal actors, not to private or state actors. *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000).

The Fourteenth Amendment, rather than the Fifth Amendment, "restricts the activities of the states and their instrumentalities." *Id.* When a complaint cites both the Fifth Amendment and the Fourteenth Amendment in an attempt to redress alleged due process violations by state actors, the invocation of the Fifth Amendment is a "nullity" and is "redundant" of the invocation of the Fourteenth Amendment. *Id.* Plaintiff's complaint does exactly that. Therefore, the Court will dismiss his Fifth Amendment claims.

### F.      Fourteenth Amendment

### 1.      Denial of copies, lost law library time, and threat to reclassify without due process

Plaintiff makes a conclusory assertion that his due process rights were violated when he was denied copies, had his law library time decreased by two hours a week, and was threatened with reclassification which would require him to have a prison job. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v.*

*Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

     With respect to Plaintiff's claim that the denial of copies, the decrease in his law library time, and the threat to reclassify him violated MDOC policy, these due process claims merit little discussion. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

     As noted above, Plaintiff fails to show that the denial of copies implicated his rights under the First Amendment. Nor does Plaintiff have a protected property right in obtaining copies. Regarding Plaintiff's claim that his law library time was decreased and that he was potentially going to be reclassified, the Court notes that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

     Plaintiff does not state a violation of his due process rights. Plaintiff does not have a protected liberty interest in the procedures affecting his classification as indigent or in having four hours of law library time per week because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486. In addition, with regard to Plaintiff's claim that he was to be reclassified, Plaintiff fails to allege facts showing that he was in fact reclassified, or that any of the named Defendants were involved

in the decision to reclassify him. Because Plaintiff does not have a liberty interest in having four hours of law library time each week, as opposed to two, or in avoiding reclassification, he fails to state a due process claim.

### 2.    Equal protection claim against Defendant Hitchingham

Plaintiff asserts that Defendant Hitchingham discriminated against him because he is Black. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiff alleges that he observed Defendant Hitchingham giving Caucasian prisoners copies even after arguing with them, and that at least one Caucasian prisoner told him that he has no difficulty in getting copies from Defendant Hitchingham. The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Although Plaintiff asserts that other Caucasian prisoners were not denied copies, Plaintiff fails to allege facts supporting an inference that these prisoners were similarly situated to him in all relevant respects. Plaintiff fails to allege the reason that these other prisoners were seeking copies, such as the content of the copies, or the nature of the lawsuit or complaint for which they

were requesting exhibits. Therefore, Plaintiff's equal protection claim against Defendant Hitchingham is properly dismissed.

### G.     Conspiracy

Plaintiff claims that Defendants conspired with one another to violate his rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a

"possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

**III.    Pending motions for preliminary injunction, to compel, and for appointment of counsel**

Plaintiff has filed a motion for an injunction to "ensure that the defendants stop all retaliation and future misconducts." (ECF No. 3, PageID.39.) Plaintiff states that he is concerned about being able to access the court to pursue his claims in this and other cases. (*Id.*, PageID.40.) Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great*

*Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his retaliation claim against Defendant Hitchingham or his legal mail claim against Defendant Silliman. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578; *see also D.T. et al. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (holding that, absent a showing of irreparable harm, a preliminary injunction is not appropriate, regardless of the strength of the other factors). Since filing this motion, the case has proceeded without incident. There is no evidence that Defendants engaged in any of the activities from which Plaintiff seeks to restrain them. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief (ECF No. 3) will be denied.

Plaintiff has filed a "Motion to Compel Defendants to Copy Plaintiff's Exhibits" for this action. However, Defendants have not yet been served or made an appearance in this case. Therefore, this motion (ECF No. 4) will be denied as premature.

Finally, Plaintiff has filed a motion for the appointment of counsel. (ECF No. 6.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's

discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 6) will therefore be denied.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kissell, Rewerts, Nevins, Unknown Party #1, and Unknown Party #2 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's conspiracy claims against Defendants Hitchingham and Silliman, and his access to courts, Fifth Amendment, due process, and equal protection claims against Defendant Hitchingham. Plaintiff's retaliation claim against Defendants Hitchingham and his legal mail claim against Defendant Silliman remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 18, 2024                                   /s/ Ray Kent
                                                         Ray Kent
                                                         United States Magistrate Judge